IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

LINDA R. WYATT,                    )
                                   )
        Plaintiff                  )
                                   )
        v.                         )        No. 2:06-cv-244
                                   )
MICHAEL J. ASTRUE[1],              )
Commissioner of                    
Social Security,                   )
                                   )
        Defendant                  )

**MEMORANDUM OPINION**

This is an action for judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision denying plaintiff's claim for Disability Insurance Benefits under Title II of the Social Security Act. For the reasons that follow, plaintiff's motion for summary judgment [Court File #12] will be denied, defendant's motion for summary judgment [Court File #14] will be granted, and the final decision of the Commissioner will be affirmed.

---

[1]On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure and Title 42 of the United States Code, Section 405(g), Michael Astrue is automatically substituted as the defendant in this civil action.

I.

**Procedural History**

Plaintiff Linda Wyatt previously filed for disability and was found entitled to Disability Insurance Benefits (DIB) beginning on February 14, 1997 based on the opinion of her treating physician, Dr. Kimbrough, that she was permanently disabled from all work due to neck and shoulder pain caused by spasmodic torticollis[2]. Upon review of plaintiff's entitlement to continuing disability benefits, the Administrative Law Judge (ALJ) found in April 2002 that plaintiff's condition had improved to the extent that she was capable of working. The ALJ's decision to cease benefits was affirmed on May 13, 2003. That decision is now res judicata to all claims of disability as of that date. Plaintiff then filed a subsequent claim for disability benefits on May 20, 2003, alleging disability beginning on May 14, 2003 again due to neck and shoulder pain from spasmodic torticollis and nerves. This claim was denied on February 9, 2004 and again on reconsideration on September 19, 2004.

On August 9, 2005, plaintiff appeared at a hearing to review her claim, and the same ALJ found that plaintiff was capable of performing a full range of light work. This

---

[2] Spasmodic torticollis may be defined as an affection of the muscles and nerves of the neck, evidenced by reflex spasms of jerking motions of the head and neck to one side or the other. In the instant case the spasms directed the motion to the right. The progressive nature of the affection is evidenced by an increase in the frequency and severity of the spasmodic movements. Medical science has been unable to ascertain or assign the cause of the affection. The disorder is now attributed to either the effect of a degenerative process in the brain, a basal ganglia or lesion, or to a psychogenic condition which may be hysterical in origin.

decision became the final decision of the Commissioner when the Appeals Council declined review on September 15, 2006. The sole question in this review is whether that latter determination is supported by substantial evidence in the record.

II.

**Factual Background**

Plaintiff Linda Wyatt was born in 1951 and is currently a 53 year old individual closely approaching advanced age. She has a limited (11th grade) education and no transferable skills from any past relevant work. Her past work as a machine operator is classified as medium, unskilled labor.

At the most recent hearing before the ALJ, plaintiff testified that she "stay[s] in a lot of pain, muscles in my neck, just pain my in back and my shoulders." (R.255). She testified that for treatment, she takes "just medication, pain medication. And... I have to lay down during the day... to get the pain to ease off." (R.256). She also testified that she drives a car, goes to the grocery store, prepares some meals, reads and watches television, goes to church, and dusts around her house sometimes. (R.257-62.) For pain, plaintiff testified that she uses a heating pad two to three times a day.

III.

**Medical Evidence**

In May 1997, plaintiff's treating physician, Dr. Kimbrough, opined that plaintiff had significant torticollis, significant neck dysfunction, significant distortion of the spine, and associated musculoskeletal discomfort and pain.  He further stated that the torticollis had set up in a permanent condition and that plaintiff could not return to any work that would require her to do a lot of back and forth or up and down movements of her body or particularly her neck; therefore, she would be unemployable for almost all job situations.  Dr. Kimbrough continued to give plaintiff Botox injections which significantly helped the spasmodic torticollis.  He concluded that he felt plaintiff would be unable to maintain any future employment.

In May 1998, plaintiff reported that she was very anxious, nervous, and depressed overall. Dr. Kimbrough prescribed plaintiff Naprosyn, Paxil, Trazodone, and Lortab for pain. Botox injections were recommended in three months.  In September 1998, plaintiff was having a lot of problems with depression, anxiety, and nervousness, which she attributed to being off work.  Dr. Kimbrough prescribed Amitriptyline and Valium, and Botox injections were suggested for her next return visit.  In October 1998, plaintiff's pain was less since she had not been working, and she noted to be sleeping somewhat better, but was concerned about her life and was losing self esteem from lack of work.  However, plaintiff required no treatment by a primary care physician or by a mental health provider for her nerves.  She was again prescribed Amitriptyline, Valium, and future Botox injections, in addition to suggested vocational

rehabilitation.

In June 2001, Dr. Kimbrough noted that plaintiff was "doing very well over the past two to three years until recently she was at Dollywood and went on a ride that flipped her around." (R.117). In the same report, he noted that plaintiff has been on no medications recently but states she has had to take a lot of Tylenol and Advil because of the pain. Dr. Kimbrough concluded that, although plaintiff had a little bit of distortion of the neck and some tenderness to palpation throughout the neck and the base of the skull with some tightness of her muscles, no major torticollis was noted and her spasmodic torticollis is continuing to do fairly well. He noted that physical therapy might be beneficial if plaintiff did not improve in the next three to four weeks, but further Botox injections were not warranted at that time.

In November 2001, Dr. Kimbrough noted that plaintiff was overall "doing extremely well when I last saw her..." (R.116). He further stated his impression that plaintiff could carry out the responsibilities of a job with the torticollis of her type. He did not see any condition of plaintiff's that would produce a significant problem with possible employment.

In January 2003, four months before her most recent alleged onset date, plaintiff had a consultative examination performed by Dr. Karl W. Konrad. This examination was characterized as "unremarkable," and Dr. Konrad noted that plaintiff had full range of motion in all joints, with no tenderness or swelling in any joint. Plaintiff's coordination, gait, and strength were all described as normal. He concluded that plaintiff had no impairment-related physical

5

limitations. Plaintiff's mental status was described as alert and oriented, and she appeared to be of average intelligence. Dr. Konrad also noted that he did not believe he received full cooperation from plaintiff at this examination. (R.187).

In July 2003, plaintiff obtained a new treating physician, Dr. Scott Kirsch, and complained of neck and shoulder pain due to spasmodic torticollis. Dr. Kirsch ordered physical therapy for pain management. In January 2004, plaintiff again complained of tenderness in her neck and shoulder. Dr. Kirsch observed good range of motion and referred plaintiff to a mental health clinic for detailed forms regarding her mental/psychological limitations. This referral was refused due to no shows.

From July 2003 through December 2003, plaintiff underwent physical therapy for her neck pain. Plaintiff reported continued improvements in her condition after each therapy session. The therapist also observed significant progress over three weeks of therapy, including improved range of motion and decreased muscle spasms. Plaintiff then did not attend therapy for several weeks, although the therapist indicated that plaintiff would see more progress if she attended therapy more consistently.

In January 2004, a state agency reviewing physician, Dr. Tilley, examined the record and opined that plaintiff did not have any severe impairments. In September 2004, Dr. Burr reviewed the plaintiff's record and noted that plaintiff was capable of performing medium level work, including lifting 50 lbs. occasionally, 25 lbs. frequently, and standing or sitting for

six hours in an eight hour workday.

In February 2005, plaintiff's treating physician, Dr. Kirsch, noted that plaintiff was "doing well" and her neck pain was only severe enough to require Hydrocodone "every day or two." Dr. Kirsch suggested pain management, vocational rehabilitation services, and additional physical therapy. There is no evidence any of these actions were taken by plaintiff.

IV.

**Standard of Review**

"The findings of the [Commissioner] as to any fact, if supported by substantial evidence shall be conclusive. ..." 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). The Court also reviews the ALJ's decision to determine "whether the [Commissioner] employed the proper legal standards in reaching her conclusion." *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). When the ALJ's findings are not supported

by substantial evidence, or if the ALJ has committed legal error, the reviewing court shall reverse and remand the case for further administrative proceedings unless "the proof of disability is overwhelming or ... the proof of disability is strong and evidence to the contrary is lacking." *Faucher v. Secretary of Health & Human Services*, 17 F.3d 171, 176 (6th Cir. 1994).

V.

**Application of the Five-Step Sequential Evaluation Process**

Disability is evaluated pursuant to a five-step analysis summarized as follows:

(1) If claimant is capable of doing substantial gainful activity, he is not disabled.

(2) If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

(3) If claimant is not doing substantial gainful activity and is suffering from a severe impairment that lasted or is expected to last for a continuous period of at least 12 months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4) If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

> (5) Even if claimant's impairment does not prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Commissioner of Social Security*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 CFR § 404.1520). Plaintiff bears the burden of proof in the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *See id*.

## VI.

## Analysis

Plaintiff claims that she became disabled on May 14, 2003, due to neck and shoulder pain caused by spasmodic torticollis. The ALJ gave the plaintiff the benefit of the doubt and went through all five steps of the sequential evaluation process. He determined that the plaintiff had the residual functional capacity (RFC) to perform a full range of light work. Upon a careful review of the record, I find that the ALJ's determination is supported by substantial evidence in the record.

First, there is no medical evidence in the record in which a physician claims that plaintiff is barred from performing any physical or work-related activities as of May 14, 2003. Rather, each opinion is consistent with ALJ's finding of a RFC for light work. In fact, Dr. Kirsch, plaintiff's treating physician, stated in February 2005 that plaintiff was doing well and

9

the pain was only severe enough to require pain medication every day or two. Her physical therapist reported that plaintiff had made significant progress while she attended therapy sessions, but also noted that plaintiff had not recently been attending therapy.

Second, plaintiff's own testimony did not support a finding of disability as of May 14, 2003. In August 2005, the ALJ observed the demeanor of the plaintiff at an administrative hearing and considered the evidence from the medical records and her daily activities. Plaintiff testified that she engaged in a number of activities that undermine her claim of disability, namely driving a car, preparing meals, visiting friends, watching television, and personal care. The ALJ also noted that she didn't require much pain medication or seek therapy. Failure to seek mental health treatment is important when assessing plaintiff's credibility. *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997).

Third, Dr. Konrad had the opportunity to examine the plaintiff and found no work-related limitations whatsoever. In January 2003, Dr. Konrad found that plaintiff had full range of motion and no impairment-related physical limitations. The state agency consultants agreed: Dr. Tilley stated in January 2004 that plaintiff had no severe impairments. Dr. Burr stated in September 2004 that plaintiff could perform medium level work.

Plaintiff cites to medical opinions from her treating physician rendered outside the time frame at issue here in claiming disability. This court is aware that Dr. Kimbrough was a treating physician and that their opinions are entitled to deference. Medical opinions and

10

diagnoses of treating physicians are generally accorded substantial deference, and if opinions are uncontradicted, complete deference. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). However, treating physician opinions are only accorded great weight when supported by sufficient clinical findings and are consistent with the evidence. *Young v. Secretary of Health & Human Services*, 925 F.2d 146, 151 (6th Cir. 1990). Dr. Kimbrough has failed to render any opinion in regards to plaintiff's disability during the relevant time frame and discharged her one year before her alleged onset date. Every medical opinion in the record given during the relevant time frame held that plaintiff had no work-related limitations and was not disabled. Moreover, the ultimate determination of disability is the prerogative of the Commissioner, not the treating physician. *Harris,* 756 F.2d at 435.

Plaintiff argues that the ALJ did not specifically address the question of whether she was capable of performing the push/pull requirements of light work. In this case, however, there was no need to address such an issue. No physician in the record opined that plaintiff, as of May 14, 2003, was barred from performing any push/pull activities. In fact, Dr. Konrad and the state agency reviewing physicians found no limitations whatsoever, with Dr. Burr finding no limitations at a medium level of work, push/pull or otherwise.

VIII.

## Conclusion

In light of the foregoing, there is substantial evidence to support the ALJ's finding that plaintiff has a residual functional capacity for light work.  Plaintiff's motion for summary judgment [Court File #12] is DENIED, defendant's motion for summary judgment [Court File #14]  is GRANTED, and the final decision of the defendant Commissioner is hereby AFFIRMED.

Enter judgment accordingly.

          _s/ James H. Jarvis_
          UNITED STATES DISTRICT JUDGE